Bron Rammell (ISB No.: 4389)
Brit A. Lewis (ISB No.: 12896)
MAY, RAMMELL & WELLS, CHTD
216 W. Whitman / P.O. Box 370
Pocatello, Idaho  83204-0370
Telephone:  (208) 233-0132
Facsimile:  (208) 234-2961
bron@mrwlaw.net
brit@mrwlaw.net

*Attorneys for Plaintiffs.*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CURTIS LEE CATON, an individual, and CHRISTA ANGELIKA CATON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CUSTER COUNTY, IDAHO, a political subdivision of the State of Idaho; JORDAN KUNKEL, an individual; DAVE WALLS, an individual; ETHAN KELLY, an individual; LEVI MAYDOLE, an individual; DENNIS COLE THORNOCK, an individual; SARAH PHILLIPS, also known as SARAH THORNOCK, an individual, as parents and natural guardians of D.T.; D.T., also known as D.A., a minor individual; JAIDEN WRIGHT, an individual; RIGIN DIXON, an individual; CHRISTINE MATSON, also known as CHRIS MATSON, an individual; and DOES 1 through 10,<br><br>Defendants. | CASE NO.: 4:26-cv-291<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## **BACKGROUND**

This case alleges claims under 42 U.S.C. 1983.  It also alleges claims against various

individuals for state common law violations.  The 1983 Civil Rights violations can only be

understood by first understanding the initial events that gave rise to those violations. In the "Fact" section below, the Plaintiffs therefore start with the facts that gave rise to the Civil Rights violations. They then recite those factual allegations that form the basis for Plaintiffs' 42 U.S.C. § 1983 claims, which include violations of Curtis's Fourth Amendment rights to be free from unreasonable seizure, malicious prosecution, and judicial deception, as applied through the Fourteenth Amendment; Curtis's Fourteenth Amendment due-process rights concerning suppressed, fabricated, or misleadingly presented evidence; and Christa's Fourth Amendment rights to be free from unreasonable seizure, excessive force, and failure to intervene, as applied through the Fourteenth Amendment. The initial events also form the basis for Plaintiffs' § 1983 conspiracy/joint-action count, which is part of the allegations in this Complaint.

## **JURISDICTION AND THE PARTIES**

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1988.

2. This Court has original jurisdiction over Plaintiffs' claims under 42 U.S.C. § 1983, including Plaintiffs' claims that certain private defendants acted jointly and in conspiracy with state actors to violate Plaintiffs' constitutional rights, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

3. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims against Defendants Dennis Cole Thornock, Sarah Phillips, D.T. , Jaiden Wright, and Rigin Dixon, pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy and Plaintiffs' federal claims are so intertwined and connected that they cannot reasonably be separated.

4. Venue is proper in the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in Custer County, Idaho.

5. Plaintiff Curtis Lee Caton ("Curtis") is, and at all times relevant was, a resident of Challis, Custer County, Idaho.

6. Plaintiff Christa Angelika Caton ("Christa") is, and at all times relevant was, a resident of Challis, Custer County, Idaho.

7. Defendant Custer County, Idaho ("Custer County") is a political subdivision of the State of Idaho.

8. At all times relevant, Custer County, through the Custer County Sheriff's Office and its final policymakers, was responsible for the hiring, training, supervision, discipline, policies, practices, customs, and usage governing the deputies, investigators, and other personnel involved in the events alleged herein.

9. At all times relevant, Defendant Jordan Kunkel ("Kunkel") was employed by Custer County as a deputy sheriff with the Custer County Sheriff's Office. Kunkel is sued in his individual capacity.

10. At all times relevant, Defendant Dave Walls ("Walls") was employed by Custer County as a deputy sheriff and investigating officer with the Custer County Sheriff's Office. Walls is sued in his individual capacity.

11. At all times relevant, Defendant Levi Maydole ("Maydole") was the Sheriff of Custer County. Maydole is sued in his individual capacity.

12. Maydole is also the final decision maker for the County Sheriff's office and sets and creates policy.

13. At all times relevant, Defendant Ethan Kelly ("Kelly") was employed by Custer County as a deputy sheriff with the Custer County Sheriff's Office. Kelly is sued in his individual capacity.

14. At all relevant times, Defendants Kunkel, Kelly, Walls, and Maydole acted under color of the statutes, customs, policies, and usages of the State of Idaho and Custer County and are "persons" within the meaning of 42 U.S.C. § 1983.

15. Upon information and belief, Defendant Christine Matson, also known as Chris Matson ("Matson"), was employed by the Custer County Prosecuting Attorney's Office as an administrative assistant during the criminal prosecution of Curtis. Matson is sued in her individual capacity.

16. At all relevant times, Matson acted under color of state law when she handled, edited, summarized, transmitted, influenced, or assisted with witness statements, prosecution materials, discovery materials, and other prosecutor-facing or court-facing information used in Curtis's criminal case.

17. Upon information and belief, Defendant Dennis Cole Thornock ("Cole Thornock") is a resident of Custer County, Idaho. At all times relevant, Cole Thornock was a private individual involved in the events of May 11 and May 12, 2024.

18. Upon information and belief, Defendant Sarah Phillips, also known as Sarah Thornock ("Sarah Phillips"), is a resident of Custer County, Idaho. At all times relevant, Sarah Phillips was a private individual involved in the events of May 11 and May 12, 2024.

19. Dennis Cole Thornock and Sarah Phillips are believed to be the natural parents of D.T.

20. Upon information and belief, Defendant D.T. also known as D.A. is a minor, was born in 2009, and is a resident of Idaho. At all times relevant, D.T. was a private individual involved in the events of May 11 and May 12, 2024.

21. Upon information and belief, Defendant Jaiden Wright ("Wright") is a resident of Idaho. At all times relevant, Wright was a private individual involved in the events of May 11 and May 12, 2024.

22. Upon information and belief, Defendant Rigin Dixon ("Dixon") is a resident of Idaho. At all times relevant, Dixon was a private individual involved in the events of May 11 and May 12, 2024.

23. Defendants Dennis Cole Thornock, Sarah Phillips, D.T., Jaiden Wright, and Rigin Dixon are named as § 1983 conspiracy/joint-action Defendants and have been sued for state common-law violations, which are ancillary and pendant to their federal law violations.

24. The true names and capacities of Defendants sued herein as DOES 1 through 10 are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

25. Whenever this Complaint refers to any act or omission of a county defendant, it means the acts and omissions of that defendant's officers, employees, agents, and representatives acting under color of law,  and pursuant to county policy, custom, or practice, except where otherwise specifically alleged.

## FACTS

26. The following facts were known, or clearly should have been known by the Sheriff's department defendants and Custer County at the time Christa Caton was wrongfully seized, arrested, subjected to excessive force in violation of her 4th and/or 14th amendment rights.

27. The following facts were known, or clearly should have been known by the Sheriff's department defendants and Custer County at the time Curtis Caton was wrongfully seized, arrested, subjected to excessive force in violation of her 4th and/or 14th amendment rights. and was wrongfully or maliciously prosecuted under the 4th, 5th, and or 14th Amendment rights.

28.  The preceding paragraphs are fully incorporated herein by reference.

29. On May 11, 2024, at approximately 7:00 p.m., Curtis and Christa left their home in Challis and drove to Bradbury Flats for a quiet evening outdoors.

30. They planned to rockhound, watch the Northern Lights, roast marshmallows, and sit by a campfire before returning home later that night. .

31. Curtis had recently bought a new pistol and wanted to test fire it, so he took it with him to the site and test fired it early in the evening.

32. Curtis looked and could see that no one else was in the vicinity and then test fired his new pistol.

33.  Much later, at approximately 8:30 p.m., a sea-foam green or faded-blue Dodge Dakota drove to their location, stopped briefly, and then moved to an old corral or watering-station area west of Plaintiffs' location.

34. At the time, Curtis and Christa did not know who was in the Dodge Dakota or why it had stopped near them.

35. They later learned that the Dodge Dakota was associated with Sarah Phillips and D.T..

36. D.T. was driving the Dodge Dakota with his mother, Phillips's, permission, despite knowing D.T. did not have a valid driver's license.

37. At approximately 11:00 p.m., as Plaintiffs were preparing to leave Bradbury Flats, Curtis was finishing up at the campsite, including throwing dirt on the fire.

38.  The dogs had been generally confined inside their vehicle and Christa was letting the dogs out to go pee before heading home..

39. Suddenly and unexpectedly, a white Jeep Cherokee pulled nose-to-nose with Plaintiffs' Toyota Tacoma and blasted its high beams at them.

40. Curtis was partially blinded by the beams.

41. Christa saw a male exit the Jeep and brandish what appeared to be a long-gun-type weapon toward her.

42. Christa screamed!

43. Curtis immediately yelled for her to get into the Tacoma, and they fled Bradbury Flats.

44. As Curtis and Christa fled Bradbury Flats in their Tacoma, The Jeep Cherokee and Dakota followed closely behind.

45. The headlights were close and menacing.

46. One of the pursuing vehicles was the sea-foam green or faded-blue Dodge Dakota associated with Sarah Phillips and D.T.

47. The white Jeep Cherokee associated with Jaden Wright also reappeared near Highway 93.

48. The Cherokee drove without headlights, flashed its high beams, and attempted to crowd Curtis and Christa off the road.

49. The pursuing vehicles not only tried to run Curtis and Christa off the road, they nearly hit them several times.

50. The behavior terrified the Catons.

51. They continued to accelerate in order to try to escape the drivers.

52. After Curtis accelerated onto Highway 93, the pursuing vehicles temporarily fell back and were no longer immediately beside the Tacoma.

53. Curtis and Christa still did not know who was chasing them, whether the vehicles had broken off, or whether the pursuers would follow them home.

54. Rather than lead unknown armed pursuers directly to their residence, Curtis pulled into the well-lit gas-pump area at the 7C Junction / 7C gas station to get visibility, assess the threat, and decide how to get home safely.

55. Plaintiffs did not exit their vehicle at the 7C gas station.

56. Instead, they paused in the Tacoma for approximately sixty to ninety seconds near the gas pumps, then eased the Tacoma forward far enough past the pumps to see around and behind the gas station to ensure they hadn't missed someone following them.

57. They saw a person run toward their Tacoma, which caused them to flee the 7C area.

58. After Curtis and Christa left the 7C Junction area, they still did not want to lead the pursuing vehicles directly to their home.

59. To avoid doing so, Curtis turned onto Dump Road and attempted to create distance from the vehicles before returning home.

60. On Dump Road, Curtis and Christa were cornered and prevented from leaving twice by Jaiden Wright, Rigin Dixon, Cole Thornock, and Sarah Phillips.

61. The first blockade occurred near the community trailhead.

62. The white Jeep Cherokee associated with Jaiden Wright and Rigin Dixon stopped in or near the roadway and blocked the Tacoma's path. Curtis and Christa could not safely drive forward, turn around, or leave the area without risking a collision or further confrontation.

63. They remained trapped there for approximately four to five minutes before Curtis finally managed to get past the Jeep.

64. After escaping the first blockade, Curtis continued farther up Dump Road toward the locked entrance gate to the County Dump Transfer Station.

65. Near the locked gate, a white Ford F-150 driven by Cole Thornock and occupied by Sarah Phillips blocked or cornered the Tacoma a second time.

66. Curtis and Christa were again confined in their vehicle and prevented from safely leaving for approximately sixty to ninety seconds before they managed to escape.

67. After escaping the second blockade, Curtis and Christa drove back down Dump Road toward Highway 93. From there, they headed north briefly and turned onto Blue Mountain Road toward their residence.

68. After escaping the second standoff, Plaintiffs returned toward Highway 93, then headed north and turned onto Blue Mountain Road toward their residence.

69. Plaintiffs arrived home at 331 E. Summit Circle in Challis shortly before 11:44 p.m.

70. Christa hurriedly unloaded the dogs and went inside the residence while Curtis returned to the Tacoma to secure the vehicle and gather personal items, including their phones.

71. Their phones, which had not been working throughout the day, were in a bag in the back of the Tacoma.

72. Within approximately ten to fifteen seconds of arriving at their home, the same white Ford F-150 that had blocked or cornered Plaintiffs near the locked Dump Road transfer-station gate arrived, pulled roughly parallel to Plaintiffs' Tacoma, then backed up and repositioned near the streetlight with its headlights pointed toward Plaintiffs' Tacoma and home.

73. Curtis observed Sarah Phillips inside the F-150 and saw her speaking on a phone as the vehicle pulled roughly parallel to Plaintiffs' Tacoma.

74. At or near the same time, the white Jeep Cherokee associated with Wright and Dixon stopped on Dump Road across the field, turned, and pointed its headlights toward Plaintiffs' residence.

75. The occupants of the Jeep did not exit at that location.

76. Based on the positioning of the Jeep, the timing of the F-150's arrival, and Curtis's observation of Sarah Phillips speaking on her phone, Plaintiffs allege that phone communications were used to help direct Cole Thornock and Sarah Phillips to Plaintiffs' location.

77. The F-150's positioning exposed Curtis near the Tacoma, illuminated Plaintiffs' driveway and residence, and placed the F-150's driver-side window facing Curtis.

78. At that time, Curtis did not know why Cole Thornock and Sarah Phillips had followed Plaintiffs home.

79. Curtis had returned to his vehicle to secure his personal items, including his pistol.

80. Aided by the streetlight and the F-150's headlights, Curtis saw movement inside the F-150.

81. Curtis saw the person in the driver's area reach down.

82. The F-150 then turned, and Curtis saw the stock and then the barrel of a rifle or AR-15-style weapon positioned out of the open driver's-side window and pointed directly toward him.

83. Having just retrieved his pistol out of fear for personal safety, Curtis drew his weapon at the sight of the rifle.

84. Fearing that the rifle was going to fire at him or Christa in their home, Curtis fired his pistol toward the driver's side of the white F-150 in response to the AR-15-style firearm being pointed at him from the vehicle.

85. As the F-150 drove away, Sarah Phillips discharged a handgun from inside the F-150.

86. Phillips fired through or toward the rear window while attempting to shoot at Curtis.

87. This shattered her own window.

88. Thornock and Phillips drove away, Cole Thornock yelled, "I'm going to kill you, you mother fucker," or words to that effect.

89. This was reported to the police by another witness.

90. Sarah Phillips called 911 while Cole Thornock was present

91. What they said in the 911 call was false and misleading.

92. For example, they completely omitted the pursuit from Bradbury Flats, the blockades on Dump Road, the confrontation at Plaintiffs' home, their own use of firearms in the F-150, and Cole Thornock's threat to kill Curtis.

93. Cole Thornock and Sarah Phillips knew the sheriff and others (like Christine Matson) who participated in arresting and charging the plaintiffs, and creating false reports that led to the loss of their liberty and property.

94. They conspired together to deprive the Plaintiffs of their liberty and property in a violation of the Plaintiffs' civil rights.

95. During the initial law-enforcement contact, Cole Thornock still had the AR-15 and a Springfield 9mm in the F-150 used on Plaintiffs, when he spoke with Deputy Walls.

96. By 11:46 p.m., Deputy Tyler Bennett knew that Phillips had reported being on scene at 331 Summit Circle.

97. He and the other officers, therefore, clearly knew that Phillips and Thornock had lied and had not merely been at a safe distance waiting for law enforcement, as they originally claimed.

98. At or near that same initial law-enforcement contact, deputies knew or should have known that Cole Thornock and Phillips were not unarmed passive victims.

99. A constitutionally adequate probable-cause investigation required deputies to account for those facts.

100. The false information ultimately led to the unlawful seizure, arrest, charges and wrongful prosecution of Curtis.

101. Shortly after midnight on May 12, 2024, deputies from the Custer County Sheriff's Office responded to Plaintiffs' residence.

102. Plaintiffs' first direct contact with law enforcement occurred at the front door of their home.

103. Deputies knocked or pounded on the front door while Curtis was inside getting dressed.

104. Christa opened the front door.

105. Before any officer spoke with Curtis, Defendant Kunkel, in the presence of Defendant Kelly and other responding deputies whose identities are presently unknown, grabbed Christa from inside the home and placed a firearm against her temple.

106. Kunkel then dragged Christa from inside her home, outside into the darkness.

107. Kelly and the Doe deputy defendants were present at or near the doorway and observed, or had a reasonable opportunity to observe, Kunkel's seizure and use of force against Christa.

108. Kelly and the Doe deputy defendants had a realistic opportunity to intervene by directing Kunkel to lower or holster his weapon, by stopping the use of force, by taking control of the

escort, by giving clear commands, or by otherwise preventing or shortening the unconstitutional seizure and force used against Christa.

109. Kelly and the Doe deputy defendants' failure to intervene violated Christa's Fourth Amendment rights, as applied to the States through the Fourteenth Amendment, because they had a realistic opportunity to prevent or shorten Kunkel's unreasonable seizure and excessive use of force but failed to do so.

110. Instead, they allowed Kunkel to continue taking Christa's liberty without due process..

111. There was no warrant allowing Kunkel or any other law enforcement officer to enter Christa's home.

112. There was no warrant allowing Kunkel or any other law enforcement officer to arrest Christa.

113. There was no warrant allowing Kunkel or any other law enforcement officer to arrest Curtis.

114. By pointing a firearm at Christa's temple, grabbing her, removing her from inside the home, dragging her outside, and keeping her under officer control, Kunkel intentionally restrained Christa's freedom..

115. Kunkel and Kelly had no probable cause to detain or arrest Christa.

116. No charges were ever filed or brought against Christa.

117. Kunkel's conduct constituted a seizure and unlawful detention of Christa under the Fourth Amendment to the United States Constitution, as applied to state actors through the Fourteenth Amendment and made actionable by 42 U.S.C. § 1983.

118. Kunkel also used excessive force against Christa in violation of the Fourth Amendment to the United States Constitution.

119.    At the time Kunkel seized and used force against Christa, Christa was unarmed.

120.    She was visibly frightened,

121.    She was not the reported shooter.

122.    She was not accused of firing a weapon and was not identified by any witness as an alleged shooter.

123.    She did not attempt to flee and did not threaten any officer.

124.    Christa fully complied with Kunkel and the other officers.

125.    No officer had specific, articulable facts or probable cause to believe that Christa posed an immediate threat to officer safety.

126.    She was nevertheless kept under officer control at or near a patrol vehicle and was not free to disregard police commands or return to her home.

127.    No officer had reasonable suspicion, probable cause, or any other lawful basis to believe that Christa had committed, was committing, or was about to commit a crime.

128.    Nor did any officer have specific, articulable facts showing that Christa was armed, dangerous, resisting, fleeing, threatening officers, or otherwise posed an immediate threat to the safety of any officer or other person.

129.    Any legitimate law-enforcement interest in securing the residence could have been accomplished through clear commands, a controlled escort, temporary detention if legally justified, and ordinary scene-security measures.

130.    It did not require placing a firearm against Christa's head or dragging her into the darkness.

131.    The force used against Christa caused immediate terror, humiliation, and emotional trauma, and left her with lasting fear and loss of security in her own home.

132.    After Christa was removed, Curtis remained inside the residence and a lengthy armed standoff followed.

133.    Plaintiffs' adult daughter, Michayla Kerley, was inside the residence during the police response and standoff.

134.    Michayla was asleep in the basement during the events that led to the police response and did not participate in the confrontation outside the home.

135.    Michayla woke up when SWAT used a loudspeaker outside the home. She exited the residence without seeing Curtis and without knowing what was happening.

136.    Custer County law enforcement published a false statement to the public that implied that Mychayla had been a hostage. At least one Custer County deputy falsely stated in a police report that Curtis pushed Michayla, described as "the hostage," out the front door.

137.    This false information was then reported to the prosecutor.

138.    Defendants Maydole, Walls, and Does 1 through 10 knew the information was false at the time they published it to the public and to the prosecutor, for purposes of prosecuting Curtis.

139.    The hostage narrative was false or materially misleading.The false hostage narrative was also later used to present a false narrative to the judge in the criminal prosecution to further deprive Curtis of his liberty, by raising the bond to an insurmountable number.bond, and criminal prosecution.

140.    Curtis was arrested and taken into custody on May 12, 2024.

141.    Search warrants were later executed at 331 E. Summit Circle and associated vehicles.

142.    The warrants were only requested and filed after the above events had been completed.

143.    The warrants also contained materially incomplete and misleading accounts in order to obtain the warrants.

144. Obtaining the warrants and criminal process under these circumstances violated Curtis's rights under the Fourth Amendment, as applied to the States through the Fourteenth Amendment, and his Fourteenth Amendment due-process rights.

145. The false and misleading narrative was supplied by Cole Thornock, Sarah Phillips, D.T., Jaiden Wright, and Rigin Dixon, then adopted and preserved by Custer County law-enforcement actors, including Deputies Bennett, Kunkel, Walls, Sheriff Maydole, and presently unidentified Doe officers.

146. Defendant Chritine Matson, then further altered and manipulated the information to support a wrongful prosecution.

147. Based on the false and misleading information,, Curtis was charged with three felony counts: unlawful discharge of a firearm at an occupied vehicle, assault with intent to murder, and malicious injury to property.

148. The criminal case also included a misdemeanor resisting and obstructing charge arising from the later standoff.

149. Based on that false, incomplete and misleading narrative, the prosecution asked the court to increase Curtis's bond from $200,000 to $1,000,000.

150. The court granted the request, increased Curtis's bond to $1,000,000, and imposed no-contact and no-weapons conditions if Curtis were released.

151. All of these were violations of Curtis' 4th and 14th Amendment rights and deprived him of his liberty and property interests protected by the U.S. Constitution.

152. The Defendants' unconstitutional action caused Curtis to suffer a post-legal-process seizure, continued detention, and substantial liberty restraints under the Fourth Amendment

to the United States Constitution, as applied through the Fourteenth Amendment and made actionable through 42 U.S.C. § 1983.

153. Curtis thereafter remained incarcerated pending trial for approximately eleven months.

154. D.T., Wright, and Dixon did not merely provide isolated or mistaken witness statements.

155. They acted in concert with Cole Thornock and Sarah Phillips and the sheriff's office Defendants and Christine Matson to create a coordinated false and materially incomplete account of the Bradbury Flats encounter, the alleged shots at the then-juveniles, the route of travel, the pursuit, the communications between participants, and the identity and location of Curtis's Tacoma.

156. Those statements and omissions were overt acts in furtherance of the conspiracy because they helped create, support, and preserve the false narrative that Curtis was the sole aggressor, while concealing the pursuit, the blockades, the communications between participants, and the location evidence showing who pursued whom.

157. Those false and misleading accounts were material to the prosecutor's probable cause determination, which led to the wrongful seizure, arrest, and prosecution.

158. Alvarado, Wright, and Dixon omitted, minimized, or misrepresented their approach to Plaintiffs' campsite, the brandishing of a long-gun-type weapon toward Christa, the pursuit of Plaintiffs toward Challis, the use of headlights and no-headlights during the pursuit, communications with Phillips and Cole Thornock, and the location and movement evidence available through phones, messages, photographs, videos, GPS data, and Life360 data.

159. Defendants Walls and other named officers failed to collect, preserve, and disclose materially exculpatory information, including full GPS data, full call and phone-record data, full surveillance footage from the 7C gas station, and other digital evidence.

160. These violations were in violation of the 4th and 14th amendments.

161. Defendant Matson was not a neutral clerical employee with no connection to the substance of the case.

162. Upon information and belief, Matson had a preexisting personal relationship or familiarity with Cole Thornock, Sarah Phillips, D.T., Wright, Dixon, and/or their families.

163. Plaintiffs allege that Matson knew, before or during Curtis's felony prosecution, that Sarah Phillips had directed or encouraged the juveniles to pursue Curtis and Christa, and that the private defendants' claim that they had not been Plaintiffs in a car chase was false.

164. Plaintiffs further allege that, despite that knowledge, Matson knowingly manipulated, edited, summarized, shaped, or caused the alteration of witness information in a manner that resulted in the wrongful prosecution..

165. Plaintiffs allege that Matson also coached, assisted, or influenced witnesses in drafting statements in violation of the Plaintiffs' due process and other civil rights.

166. Matson knew or recklessly disregarded that those altered, incomplete, or misleading witness materials would be used by law enforcement, the prosecutor, and the court to support Curtis's arrest, felony charges, bond, detention, and continued prosecution.

167. Matson also failed to disclose or caused the non-disclosure of material exculpatory and impeachment information known to her, including information showing that Sarah Phillips directed or encouraged the pursuit and that the private defendants' statements denying pursuit were false or materially incomplete.

168. These acts were not merely administrative mistakes. Plaintiffs allege that Matson knowingly participated in creating, preserving, and transmitting a false and misleading

prosecution narrative that caused or prolonged Curtis's felony prosecution and pretrial detention.

169. This spoliation of evidence was the result of Custer County's practice, training, and/or policy and caused Plaintiffs material harm and damages.

170. On April 4, 2025, a jury acquitted Curtis on all three felony counts. On April 16, 2025, judgment of acquittal was entered on those three felony counts.

171. As a direct and proximate result of the acts and omissions alleged herein, Curtis suffered loss of liberty, prolonged incarceration, financial loss, attorney and investigator fees, lost wages, diminished health, emotional distress, and other damages.

172. At all times relevant, Defendant Custer County, through the Custer County Sheriff's Office and Sheriff Levi Maydole as a final policymaker for county law-enforcement operations, maintained policies, customs, practices, and omissions that were the moving force behind the constitutional violations alleged herein.

173. Custer County is liable because its own policies, customs, practices, failures to train, failures to supervise, and final policymaker decisions were the moving force behind the constitutional violations.

174. In this investigation and law-enforcement response, Plaintiffs do not allege that Custer County is liable merely because its employees made bad judgment calls.

175. Custer County is liable because Sheriff Levi Maydole, as the final policymaker for the Custer County Sheriff's Office, personally directed, approved, or failed to correct the investigative and residential-response practices that caused the constitutional violations alleged herein.

176.    Sheriff Maydole, Deputy Dave Walls, Deputy Jordan Kunkel, Deputy Tyler Bennett, Deputy Ethan Kelly, and presently unidentified Doe officers failed and even knowingly refused to provide basic constitutional safeguards required to protect against foreseeable Fourth and Fourteenth Amendment violations.

177.    Those safeguards included warrant-integrity review, disclosure of material exculpatory and impeachment evidence, preservation of known digital and location evidence, scrutiny of armed participant-complainants before treating them as passive victims, and supervisory correction of materially false or incomplete reports and communications.

178.    Defendant Kunkel signed, or caused the submission of arrest-warrant and probable-cause materials against Curtis while knowingly submitting misleading information, including omitting material facts known or available to law enforcement, including the pursuit, the Dump Road blockades, the firearms in the F-150, Cole Thornock's threat to kill Curtis, and the facts supporting Curtis's claim of self-defense, which is codified in Idaho Code 19-202A.

179.    Defendant Walls, as the investigating officer, knew that GPS, Life360, phone, call-record, text-message, surveillance-video, and participant-location evidence was material to the central issues of who pursued whom, where the participants were located, and whether Curtis acted in self-defense.

180.    Walls nevertheless failed to preserve, disclose, or accurately account for the full available location and digital evidence, including the full 7C surveillance footage, phone and call records, communications between the juveniles, Sarah Phillips, Cole Thornock, and others, and the underlying GPS or Life360-related data.

181.    Defendant Bennett participated in the initial response and had contact with the participant-complainants, including Cole Thornock, Sarah Phillips, D.T., Wright, and Dixon.

Bennett knew or had reason to know that Cole Thornock and Sarah Phillips were making false or misleading statements to the police..

182.    Despite this knowledge, Bennett failed to disclose or correct those facts in the law-enforcement narrative that was later used to support Curtis's unlawful arrest, bond, detention, and prosecution.

183.    Defendants Maydole, Walls, Kunkel, Bennett, and Does also knew or had reason to know that Sarah Phillips's earlier written statement misleadingly omitted material facts, including Cole Thornock's firearms, Cole Thornock's threat to kill Curtis, and the fact that Phillips called 911 before she and Cole Thornock went looking for Plaintiffs' Tacoma.

184.    Despite knowing those omissions materially affected probable cause, Defendants failed to correct the narrative before it was used to arrest, charge, detain, and prosecute Curtis.

185.    Defendants Kunkel, Kelly, and presently unidentified Doe officers also failed to apply basic Fourth Amendment safeguards during the residential response.

186.    Christa was not the reported shooter, was not accused of firing a weapon, and was not shown by specific, articulable facts to pose an immediate threat.

187.    Despite that, Kunkel seized her and used force against her, while Kelly and Doe officers who were present failed to intervene despite having a realistic opportunity to do so.

188.    Sheriff Maydole's failure to require, enforce, or supervise these safeguards was the moving force behind Curtis's Fourth Amendment seizure through materially false or incomplete probable-cause materials, Curtis's Fourteenth Amendment due-process injury from deliberate or reckless suppression and misleading disclosure of material evidence, and Christa's Fourth Amendment unreasonable seizure and excessive-force injuries.

189. Custer County's failure to train and supervise deputies on high-risk residential responses was obvious in this case. Officers were responding to a home where they believed an armed suspect was present, where other family members were also present, and where mistakes in identification, commands, seizure, and force could foreseeably cause serious constitutional harm.

190. Custer County failed to train on, supervise, or enforce basic residential-response safeguards, including individualized threat assessment, clear officer identification and commands, separation of suspects from non-suspect occupants, proportional force, de-escalation where feasible, supervisory control over force used against non-suspect occupants, and accurate documentation of the basis for any seizure or force.

191. Defendant Maydole was not a distant supervisor reviewing paperwork after the fact.

192. As Sheriff, he personally participated in and directed the response, helped shape the investigation, approved or ratified the incomplete investigative narrative, and allowed that narrative to continue influencing the prosecution and Curtis's detention even after material omissions became known or apparent.

193. Maydole had final responsibility within the Custer County Sheriff's Office for the residential response, deputy supervision, evidence-handling decisions, use-of-force oversight, and prosecutor-facing probable-cause materials generated by his office in this felony investigation.

194. Maydole knew or should have known that the probable-cause narrative being advanced to prosecutors and courts created a false and misleading story and omitted material facts concerning the pursuit, Cole Thornock's firearms, Thornock's threat, the active search for

Curtis's vehicle, and the available GPS, Life360, phone, call-record, and surveillance evidence.

195.    Maydole also knew or should have known that Christa was not the reported shooter and that officers lacked probable cause to enter her house, arrest her or point a gun to her temple. her.

196.    By allowing the unconstitutional behavior, including the false and misleading information and other information to be used, and by failing to correct or discipline the unconstitutional handling of Christa at the home, Maydole made or ratified final-policymaker decisions for Custer County.

197.    Those decisions were not merely subordinate officers' isolated mistakes. They were the Sheriff's approval, ratification, or deliberate indifference to a felony investigation, residential response, evidence-handling process, and probable-cause narrative that failed to include basic constitutional safeguards.

198.    Custer County, through Maydole and the Sheriff's Office, failed to implement and enforce basic safeguards requiring deputies in serious felony investigations to preserve and disclose complete digital source evidence, identify the date, time, location, participants, and officer for all interviews and recordings, review probable-cause materials for material omissions before those materials were used to arrest and detain a suspect, and document the basis for seizures and force used against non-suspect occupants during residential responses.

199.    The need for those constitutional safeguards was obvious.

200.    As a result of the illegal and unconstitutional behavior described above, the Plaintiffs were deprived of their liberty and property.

201.    Plaintiffs suffered damages in excess of $100,000 and are entitled to full compensation for those deprivations, which compensation includes but is not limited to nominal damages; lost income and related damages; damage to their reputation; general damages, including but not limited to humiliation, severe emotional distress, anxiety, embarrassment, and other general damages;  attorney's fees and costs; and other damages.

202.    Plaintiffs were forced to file this suit and prosecute this action in order to have their rights vindicated and seek attorney's fees under 42 USC 1988.

### FIRST CAUSE OF ACTION
(42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure)

203.    The preceding paragraphs are fully incorporated herein by reference.

204.    At all times relevant, Defendants Jordan, Kunkel, Maydole, and Does 1 through 10 acted under color of the statutes, customs, policies, and usages of the State of Idaho and Custer County.

205.    The Fourth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment, protects persons against unreasonable seizures.

206.    A person is seized within the meaning of the Fourth Amendment when an officer intentionally restrains that person's liberty by physical force or by a show of authority to which the person submits.

207.    Defendant Kunkel intentionally applied physical force and a show of authority to restrain and arrest Christa, including by taking control of her person, removing her from her home without a warrant, and placing or keeping her under officer control.

208.    Pointing a firearm at Christa's temple, forcibly removing her from inside the home, and dragging her away into the darkness was unreasonable in scope and manner and was not necessary to accomplish any legitimate law-enforcement objective as to Christa herself.

209. As a direct and proximate result of Christa's wrongful arrest and seizure, she suffered damages. Pursuant to 42 U.S.C. § 1988 and other applicable law, Christa is entitled to recover her reasonable attorney fees and costs.

**SECTION CAUSE OF ACTION**
(42 U.S.C. § 1983 – Fourth Amendment Excessive Force)

210. The preceding paragraphs are fully incorporated herein by reference.

211. At all times relevant, Defendant Jordan Kunkel and Does 1 through 10 acted under color of the statutes, customs, policies, and usages of the State of Idaho and Custer County.

212. The Fourth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment, protects persons against the use of excessive force during a seizure.

213. A claim of excessive force is governed by an objective reasonableness standard under the totality of the circumstances, viewed from the perspective of a reasonable officer on the scene.

214. On May 12, 2024, Defendant Kunkel used unnecessary force on Christa during the seizure described above.

215. As a direct and proximate result of Defendant Kunkel's use of excessive force, Christa suffered damages.

216. Pursuant to 42 U.S.C. § 1988 and other applicable law, Christa is entitled to recover her reasonable attorney fees and costs.

**THIRD CAUSE OF ACTION**
(42 U.S.C. § 1983 - 4th, 14th and/or 5th Amendment Malicious Prosecution)

217. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

218. At all times relevant, Defendants Kunkel, Walls, Maydole, Bennett, Matson, and Does 1 through 10 acted under color of state law.

219. The Fourth Amendment, as applied to the States through the Fourteenth Amendment, protected Curtis from being arrested, detained, and prosecuted through a criminal process that was caused or continued by materially false statements, misleading omissions, or a knowingly incomplete probable-cause narrative.

220. Defendants violated Curtis's 4th and/or 5th and/or 14th Amendment rights by causing and continuing felony criminal proceedings against him without probable cause, and by using or inducing others to use a materially false and misleading probable-cause narrative to secure and prolong his seizure and prosecution.

221. Defendant Kunkel personally signed, submitted, or caused the submission of arrest-warrant and probable-cause materials against Curtis.

222. In those materials, Kunkel knowingly or recklessly submitted misleading facts, including by omitting known material facts that contradicted the claims being prosecuted. Defendant Walls participated in the investigation and the presentation of the case against Curtis.

223. Walls knew or had access to material facts and evidence undermining probable cause, including GPS/location information, communications evidence, 7C surveillance evidence, facts concerning the pursuit and blockades, facts concerning firearms in the F-150, and facts concerning Cole Thornock's threat to kill Curtis.

224. Walls knowingly or recklessly failed to disclose, preserve, or accurately present those material facts in the investigative record and prosecutor-facing materials, thereby allowing the false and misleading probable-cause narrative to continue.

225.    Defendant Matson further caused or prolonged Curtis's felony prosecution by knowingly altering, shaping, suppressing, or transmitting witness information and prosecution materials that omitted material facts supporting self-defense and falsely portrayed Curtis as the sole aggressor. Matson knew or recklessly disregarded that those materials would be used to support probable cause, felony charges, bond, detention, and continued prosecution.

226.    Defendant Bennett violated Curtis's Fourth Amendment rights by affirmatively adopting and transmitting a materially misleading probable-cause narrative that treated Cole Thornock and Sarah Phillips as passive victims, despite knowing facts showing they were armed participant-complainants who had been at Plaintiffs' residence and had not merely waited safely for law enforcement. Bennett's adoption and transmission of that narrative caused or contributed to Curtis's arrest, felony prosecution, bond, and continued detention.

227.    Bennett knowingly or recklessly withheld, concealed, or corrected those material facts in the law-enforcement narrative that were used to support Curtis's arrest, felony prosecution, bond, and continued detention.

228.    Defendant Maydole personally participated in, directed, approved, or ratified the investigation and prosecution narrative.

229.    Maydole knew or was informed that the probable-cause narrative omitted material facts showing pursuit, blockades, firearms in the F-150, Cole Thornock's threat, the active search for Curtis's vehicle, and available location and communication evidence.

230.    Despite that knowledge, Maydole failed to correct the false and misleading narrative and allowed it to continue being used to justify Curtis's felony charges, bond, and detention.

231. The omitted facts were material. Had they been included, the corrected probable-cause narrative would not have supported Curtis's felony prosecution, or at a minimum would not have supported the charge of assault with intent to murder.

232. The felony prosecution caused Curtis to suffer a post-legal-process seizure, including arrest, continued detention, a $1,000,000 bond, release restrictions, and approximately eleven months of incarceration.

233. The felony prosecution terminated in Curtis's favor when he was acquitted, and a judgment of acquittal was entered on the felony counts of unlawful discharge of a firearm at an occupied vehicle, assault with intent to murder, and malicious injury to property.

234. Defendants acted intentionally, maliciously, and/or with reckless disregard for Curtis's constitutional rights by causing or continuing felony criminal process based on a materially false and misleading probable-cause narrative.

235. As a direct and proximate result of Defendants' conduct, Curtis suffered loss of liberty, prolonged incarceration, emotional distress, humiliation, reputational harm, lost income, attorney fees, defense costs, and other damages in an amount to be proven at trial.

236. Curtis is entitled to compensatory damages, punitive damages against the individual defendants where allowed by law, attorney fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION
(42 U.S.C. § 1983 – Fourth Amendment Judicial Deception)

237. The preceding paragraphs are fully incorporated herein by reference.

238. At all times relevant, Defendants Kunkel, Walls, Maydole, Matson, and Does 1 through 10 acted under color of state law.

239.    The Fourth Amendment, as applied to the States through the Fourteenth Amendment, protected Curtis from arrest, detention, bond, and criminal prosecution caused or prolonged by materially false statements, misleading omissions, or deceptive probable-cause presentations.

240.    Defendants violated Curtis's Fourth Amendment rights by preparing, signing, approving, ratifying, or using warrant materials, police reports, and probable-cause materials that falsely portrayed Curtis as the sole aggressor and omitted material facts known to law enforcement.

241.    The omitted facts included that Curtis and Christa had been pursued from Bradbury Flats, blocked or cornered on Dump Road, followed home, confronted by armed private actors, and that Cole Thornock had firearms in the F-150, including an AR-15-style firearm and a 9mm handgun.

242.    Defendants also omitted or failed to correct that Cole Thornock threatened to kill Curtis, that Sarah Phillips's prior statement omitted Cole Thornock's firearms and threat, and that Sarah Phillips and Cole Thornock had called 911 and actively searched for Curtis's Tacoma before arriving at Plaintiffs' home.

243.    Defendants further omitted or failed to accurately present material location, phone, communication, and surveillance evidence, including GPS/Life360-related information associated with D.T., that bore directly on who pursued whom, where the participants were located, and whether Curtis acted in self-defense.

244.    These omissions and misleading statements were material because, if corrected, the probable-cause presentation would not have supported Curtis's arrest, continued detention, $1,000,000 bond, or felony prosecution, or at a minimum would not have supported the charge of assault with intent to murder.

245. Defendant Kunkel participated by signing, submitting, or causing the submission of warrant or probable-cause materials containing material omissions and misleading facts.

246. Defendant Matson participated in the judicial deception by knowingly altering, shaping, or transmitting materially incomplete witness information and prosecution materials that were used in warrant materials, probable-cause presentations, reports, or communications, while omitting facts known to her that undermined probable cause.

247. Defendant Walls participated by shaping the investigative record while failing to preserve, disclose, or accurately present material exculpatory and impeachment evidence known or available to law enforcement.

248. Defendant Maydole participated by directing, approving, ratifying, or failing to correct the materially false and incomplete probable-cause narrative after knowing or having reason to know that material facts had been omitted.

249. As a direct and proximate result of Defendants' judicial deception, Curtis was arrested, detained, subjected to a $1,000,000 bond, prosecuted on felony charges, incarcerated for approximately eleven months, and suffered economic and non-economic damages in an amount to be proven at trial.

250. Defendants acted intentionally, maliciously, and/or with reckless disregard for Curtis's Fourth Amendment rights, entitling Curtis to compensatory damages, punitive damages against the individual defendants where allowed by law, attorney fees under 42 U.S.C. § 1988, costs, and all other proper relief.

**FIFTH CAUSE OF ACTION**
(42 U.S.C. § 1983, Conspiracy)

251. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

252.    At all times relevant, Defendants Bennett, Kunkel, Walls, Maydole, Matson, and Does 1 through 10 acted under color of state law.

253.    Defendants Dennis Cole Thornock, Sarah Phillips, D.T., Jaiden Wright, and Rigin Dixon acted under color of state law by willfully participating in joint action with Custer County law-enforcement actors to deprive Curtis of constitutional rights.

254.    Defendants reached an express or implied agreement to create, use, preserve, and fail to correct a false and misleading probable-cause narrative that portrayed Curtis as the sole aggressor and omitted facts known to Defendants that supported self-defense.

255.    That agreement is inferred from Defendants' coordinated conduct, including the private defendants' communications and the immediate treatment of armed participants as victims, the failure to correct known false or misleading statements, and the use of those statements in the criminal process against Curtis.

256.    The private defendants committed overt acts in furtherance of the conspiracy by giving law enforcement false or materially incomplete information concerning the Bradbury Flats encounter, the alleged shots at the then-juveniles, the pursuit toward Challis, the Dump Road blockades, the communications between participants, the firearms in the F-150, Cole Thornock's threat to kill Curtis, and the confrontation at Plaintiffs' home.

257.    D.T., Jaiden Wright, and Rigin Dixon furthered the conspiracy by falsely or misleadingly framing the beginning of the incident as Curtis firing at innocent juveniles while omitting or minimizing their own approach to Plaintiffs' campsite, the brandishing of what appeared to be a long-gun-type weapon toward Christa, the pursuit of Plaintiffs, and the use of headlights and no-headlights during that pursuit.

258.    Dennis Cole Thornock and Sarah Phillips furthered the conspiracy by falsely portraying themselves as passive victims assisting law enforcement while omitting or minimizing their active search for Plaintiffs' Tacoma, their pursuit of Plaintiffs, the Dump Road blockade, the firearms in the F-150, Cole Thornock's threat to kill Curtis, and the fact that Curtis fired only after being followed home and confronted by an armed participant.

259.    Defendant Bennett furthered the conspiracy by failing to disclose or correct facts known to him at the outset, showing that Cole Thornock, Sarah Phillips, D.T., Wright, and Dixon were participant-complainants, not neutral victims, and that their account was materially incomplete or false.

260.    Defendant Kunkel furthered the conspiracy by preparing, signing, submitting, or causing the submission of arrest-warrant or probable-cause materials that used the false victim narrative while omitting material facts showing pursuit, armed confrontation by others, and Curtis's self-defense.

261.    Defendant Walls furthered the conspiracy by failing to collect, preserve, disclose, or accurately present material GPS, Life360, phone, call-record, text-message, surveillance-video, and participant-location evidence that would have exposed the false or misleading nature of the probable-cause narrative.

262.    Defendant Maydole furthered the conspiracy by directing, approving, ratifying, or failing to correct the materially false and incomplete investigative narrative despite knowing or having reason to know that material facts had been omitted.

263.    Defendants' conspiracy and joint action violated Curtis's rights under the Fourth Amendment, as applied to the States through the Fourteenth Amendment, by causing and

prolonging his seizure, arrest, $1,000,000 bond, pretrial detention, and felony prosecution through false, misleading, and materially incomplete probable-cause materials.

264. Defendants' conspiracy and joint action also violated Curtis's rights under the Due Process Clause of the Fourteenth Amendment by deliberately or recklessly suppressing, concealing, failing to preserve, or misleadingly presenting material exculpatory and impeachment evidence bearing on self-defense, witness credibility, participant location, and who pursued whom.

265. As a direct and proximate result of Defendants' conspiracy and joint action, Curtis was arrested, charged with felony offenses, subjected to a $1,000,000 bond, incarcerated for approximately eleven months, forced to defend against felony charges, and suffered economic and non-economic damages in an amount to be proven at trial.

266. Defendants acted intentionally, maliciously, and/or with reckless disregard for Curtis's constitutional rights, entitling Curtis to compensatory damages, punitive damages against the individual defendants where allowed by law, attorney fees under 42 U.S.C. § 1988, costs, and all other relief the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
(Idaho Common-Law Malicious Prosecution Against Defendants Cole Thornock and Sarah Phillips )

267. The preceding paragraphs are fully incorporated herein by reference.

268. Defendants Cole Thornock and Sarah Phillips procured, instigated, and were a direct and proximate cause of the felony criminal prosecution brought against Curtis in Custer County Case No. CR19-24-0155.

269. That prosecution included three felony charges arising from the events of May 11 and May 12, 2024: unlawful discharge of a firearm at an occupied vehicle, assault with intent to murder, and malicious injury to property.

270. The felony prosecution terminated in Curtis's favor when a jury acquitted him on all three felony counts and judgment of acquittal was entered.

271. Cole Thornock and Sarah Phillips were not passive witnesses. They actively searched for Plaintiffs' Tacoma, followed Plaintiffs to their residence, participated in the confrontation at Plaintiffs' home, and then provided law enforcement and prosecutors with materially false, incomplete, and misleading information.

272. Cole Thornock and Sarah Phillips failed to make a full, fair, and truthful disclosure of material facts bearing on probable cause, including their active search for Plaintiffs' Tacoma, their pursuit of Plaintiffs, the Dump Road blockade, the firearms in the F-150, Cole Thornock's threat to kill Curtis, and the circumstances showing Curtis acted in self-defense.

273. Sarah Phillips later acknowledged that her earlier written statement omitted material facts, including Cole Thornock's firearms, Cole Thornock's threat to kill Curtis, and the fact that she called 911 before she and Cole Thornock went looking for Plaintiffs' Tacoma.

274. Because Cole Thornock and Sarah Phillips gave a materially false and incomplete account rather than a full and fair disclosure of the facts, the felony prosecution was instituted and continued without probable cause.

275. Cole Thornock and Sarah Phillips acted with malice, ill will, reckless disregard for the truth, and/or an improper purpose other than truthfully reporting facts to law enforcement.

276. As a direct and proximate result of the malicious prosecution procured by Cole Thornock and Sarah Phillips, Curtis was arrested, detained, held on a $1,000,000 bond with substantial

release restrictions, incarcerated for approximately eleven months, forced to incur criminal-defense and investigator expenses, and suffered emotional distress, humiliation, reputational harm, lost income, and other economic and non-economic damages in an amount to be proven at trial.

277.    Cole Thornock and Sarah Phillips are liable to Curtis for compensatory damages, costs as allowed by law, and all other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
(Idaho Common-Law Malicious Prosecution Against Defendants D.T., Jaiden Wright, and Rigin Dixon )

278.    The preceding paragraphs are fully incorporated herein by reference.

279.    Defendants D.T., Jaiden Wright, and Rigin Dixon were private individuals involved in the May 11 and May 12, 2024 events that led to the felony criminal prosecution of Curtis in Custer County Case No. CR19-24-0155.

280.    Alvarado, Wright, and Dixon knowingly, intentionally, and maliciously set in motion, procured, influenced, and/or were a direct and proximate cause of the felony criminal prosecution brought against Curtis.

281.    That prosecution included three felony charges arising from the events of May 11 and May 12, 2024, namely unlawful discharge of a firearm at an occupied vehicle, assault with intent to murder, and malicious injury to property.

282.    The felony prosecution terminated in Curtis's favor when a jury acquitted him on all three felony counts, and judgment of acquittal was entered on those counts.

283.    Alvarado, Wright, and Dixon were not passive or neutral witnesses. They were participants in the events that preceded the shooting at Curtis's residence.

284.    Alvarado, Wright, and Dixon approached Plaintiffs at Bradbury Flats, participated in the pursuit of Plaintiffs toward Challis, communicated with others during the pursuit, and helped identify, track, or report Plaintiffs' Tacoma.

285.    Alvarado, Wright, and Dixon thereafter provided statements, accusations, information, and witness accounts to law enforcement that were used to initiate, procure, influence, and continue the felony prosecution against Curtis.

286.    Alvarado, Wright, and Dixon did not make a full and fair disclosure of all material facts to law enforcement, the prosecutor, or the magistrate.

287.    Instead, Alvarado, Wright, and Dixon falsely or misleadingly framed the beginning of the incident as Curtis firing at innocent juveniles, while omitting, minimizing, or misrepresenting their own approach to Plaintiffs' campsite, the armed confrontation directed at Christa, the pursuit of Plaintiffs toward Challis, the use of headlights and no-headlights during the pursuit, their communications with Phillips and Thornock, and the location and movement evidence available through phones, messages, photographs, videos, GPS data, and Life360 data.

288.    These omissions and misrepresentations were material because probable cause depended heavily on who initiated the confrontation, who pursued whom, where the participants were located, whether Plaintiffs were cornered or followed, whether Phillips and Thornock actively searched for Curtis's Tacoma, and whether Curtis acted in self-defense when the F-150 arrived at his residence.

289.    Had Alvarado, Wright, and Dixon made a full, fair, and truthful disclosure of all material facts, there would not have been probable cause to prosecute Curtis on the felony counts, or

at minimum there would not have been probable cause to prosecute him on one or more of those felony charges.

290.    Alvarado, Wright, and Dixon acted with malice, ill will, reckless disregard for the truth, and/or an improper purpose other than bringing a truthful and fair account to law enforcement, including by providing materially incomplete and misleading information that cast Curtis as the aggressor while concealing facts that exposed their own role and conduct.

291.    As a direct and proximate result of the malicious prosecution procured, influenced, and caused by Alvarado, Wright, and Dixon, Curtis was arrested, detained, held on a $1,000,000 bond with substantial release restrictions, incarcerated for approximately eleven months, forced to incur substantial criminal-defense and investigator expenses, and suffered emotional distress, humiliation, reputational harm, lost income, and other economic and non-economic damages in an amount to be proven at trial.

292.    Defendants D.T., Jaiden Wright, and Rigin Dixon are liable to Plaintiff Curtis Lee Caton for compensatory damages, costs as allowed by law, and such other relief as the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
(Idaho Common-Law False Imprisonment Against Defendants Jaiden Wright and Rigin Dixon)

293.    The preceding paragraphs are fully incorporated herein by reference.

294.    Idaho law defines false imprisonment as the unlawful violation of the personal liberty of another. I.C. § 18-2901

295.    Defendants Jaiden Wright and Rigin Dixon intentionally restrained Curtis and Christa's physical liberty on Dump Road without consent and without lawful authority, privilege, or justification.

Case 4:26-cv-00291-DKG   Document 1   Filed 05/11/26   Page 38 of 48

296.	At or near the community trailhead on Dump Road, Wright and Dixon, by occupying, controlling, directing, or jointly participating in the use of the white Jeep Cherokee, stopped the Jeep in or near the roadway and blocked Plaintiffs' Tacoma.

297.	By blocking the Tacoma's path, Wright and Dixon confined Curtis and Christa in the Tacoma and prevented them from safely driving forward, turning around, or leaving the area.

298.	Curtis and Christa remained trapped for approximately four to five minutes.

299.	Curtis and Christa did not consent to being stopped, blocked, cornered, trapped, or detained by Wright and Dixon.

300.	Curtis and Christa were aware that their movement was restrained and understood that they could not safely leave without risking collision, renewed pursuit, or armed confrontation.

301.	The restraint was unlawful and especially coercive because it occurred after Wright, Dixon, and/or their group had approached Plaintiffs at Bradbury Flats, brandished what appeared to be a long-gun-type weapon toward Christa, pursued Plaintiffs toward Challis, used high beams, drove without headlights, and attempted to crowd the Tacoma off the road.

302.	Wright and Dixon's conduct constituted false imprisonment under Idaho law.

303.	As a direct and proximate result, Curtis and Christa suffered fear, terror, emotional distress, humiliation, loss of security, and other economic and non-economic damages in an amount to be proven at trial.

304.	Defendants Jaiden Wright and Rigin Dixon are liable to Plaintiffs Curtis Lee Caton and Christa Angelika Caton for compensatory damages, costs as allowed by law, and such other relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION

(Idaho Common-Law False Imprisonment Against Defendants Cole Thornock and Sarah Phillips)

305.    The preceding paragraphs are fully incorporated herein by reference.

306.    daho law defines false imprisonment as the unlawful violation of the personal liberty of another. I.C. § 18-2901.

307.    Defendants Cole Thornock and Sarah Phillips, acting jointly and in concert, intentionally restrained Curtis and Christa's physical liberty on Dump Road without consent and without lawful authority, privilege, or justification.

308.    After Curtis and Christa escaped the first blockade near the community trailhead, they continued farther up Dump Road toward the County Dump Transfer Station.

309.    The entrance gate to the County Dump Transfer Station was locked, leaving Curtis and Christa with no safe forward exit.

310.    Near the locked entrance gate, Cole Thornock and Sarah Phillips used, occupied, directed, assisted, or jointly participated in the use of the white Ford F-150 to block or corner Plaintiffs' Tacoma.

311.    By blocking or cornering the Tacoma near the locked gate, Cole Thornock and Sarah Phillips confined Curtis and Christa in their vehicle and prevented them from safely driving forward, turning around, or leaving the area.

312.    Curtis and Christa were trapped for approximately sixty to ninety seconds before they managed to escape.

313.    Curtis and Christa did not consent to being stopped, blocked, cornered, trapped, or detained by Cole Thornock and Sarah Phillips.

314.    Curtis and Christa were aware that their movement was restrained and understood that they could not safely leave without risking collision, renewed pursuit, or armed confrontation.

315.    The restraint was unlawful and especially coercive because Cole Thornock and Sarah Phillips had joined or continued the pursuit of Plaintiffs, were in the armed F-150, and later followed Plaintiffs to their residence.

316.    Cole Thornock and Sarah Phillips's conduct constituted false imprisonment under Idaho law.

317.    As a direct and proximate result of Cole Thornock and Sarah Phillips's false imprisonment, Curtis and Christa suffered fear, terror, emotional distress, humiliation, loss of security, and other economic and non-economic damages in an amount to be proven at trial.

318.    Defendants Cole Thornock and Sarah Phillips are liable to Plaintiffs Curtis Lee Caton and Christa Angelika Caton for compensatory damages, costs as allowed by law, and such other relief as the Court deems just and proper.

**TENTH CAUSE OF ACTION**
(42 U.S.C. § 1983 – Municipal Liability Against Custer County)

319.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

320.    Defendant Custer County is a municipal entity and a "person" subject to suit under 42 U.S.C. § 1983.

321.    Plaintiffs do not seek to hold Custer County liable under a respondeat superior theory. Plaintiffs allege that Custer County is liable because its own policies, customs, practices, omissions, failures to train, failures to supervise, and final-policymaker decisions were the moving force behind the constitutional violations alleged herein.

322. At all relevant times, Sheriff Levi Maydole was the Custer County Sheriff and final policymaker for the Custer County Sheriff's Office concerning law-enforcement response, deputy supervision, evidence handling, use-of-force oversight, and probable-cause materials. Idaho law vests county sheriffs with primary duties to enforce penal laws, preserve the peace, arrest offenders, and suppress breaches of the peace. I.C. §§ 31-2202, 31-2227.

323. Custer County, through Sheriff Maydole and the Sheriff's Office, violated Curtis's rights under the Fourth Amendment, as applied to the States through the Fourteenth Amendment, by causing or prolonging Curtis's arrest, seizure, $1,000,000 bond, pretrial detention, and felony prosecution through materially false, misleading, and incomplete probable-cause materials.

324. Custer County also violated Curtis's rights under the Due Process Clause of the Fourteenth Amendment by deliberately or recklessly failing to preserve, disclose, correct, or accurately present material exculpatory and impeachment evidence bearing on self-defense, witness credibility, participant location, and who pursued whom.

325. Custer County violated Christa's rights under the Fourth Amendment, as applied to the States through the Fourteenth Amendment, by causing or permitting her unreasonable seizure and the use of excessive force against her during the residential response.

326. Custer County maintained policies, customs, practices, or deliberate omissions that failed to require deputies to correct materially false or incomplete probable-cause narratives before those narratives were used to arrest, detain, prosecute, or continue criminal process against a suspect.

327. Custer County further failed to require, train, supervise, or enforce procedures for preserving and disclosing material GPS, Life360, phone, call-record, text-message,

surveillance-video, and participant-location evidence in a serious felony investigation where self-defense, pursuit, participant location, and witness credibility were central issues.

328.    Custer County also failed to require, train, supervise, or enforce procedures for high-risk residential responses, including individualized threat assessment, separation of suspects from non-suspect occupants, proportional force, clear commands, and documentation of the factual basis for any seizure or force used against a non-suspect occupant.

329.    The need for these safeguards was obvious because the case involved an alleged armed pursuit, multiple vehicles, multiple civilian participants, competing claims about who was the aggressor, firearms in the complaining witnesses' vehicle, a claimed self-defense shooting at Plaintiffs' home, GPS-enabled devices, phone communications, 911 calls, and available surveillance footage.

330.    Sheriff Maydole, acting as Custer County's final policymaker, directed, approved, ratified, or failed to correct the materially incomplete probable-cause narrative despite knowing or having reason to know that it omitted material facts concerning the pursuit, the Dump Road blockades, firearms in the F-150, Cole Thornock's threat to kill Curtis, the active search for Plaintiffs' Tacoma, and available digital and location evidence.

331.    Sheriff Maydole also directed, approved, ratified, or failed to correct the unconstitutional handling of Christa despite knowing or having reason to know that Christa was not the reported shooter, was not accused of firing a weapon, and was not shown by specific, articulable facts to pose an immediate threat.

332.    These policies, customs, omissions, failures to train, failures to supervise, and final-policymaker decisions were the moving force behind Curtis's arrest, bond, pretrial detention, felony prosecution, and related loss of liberty.

333.    These same policies, customs, omissions, failures to train, failures to supervise, and final-policymaker decisions were also the moving force behind Christa's unreasonable seizure and excessive force injuries.

334.    As a direct and proximate result of Custer County's conduct, Curtis suffered loss of liberty, prolonged incarceration, criminal-defense costs, investigator fees, lost income, emotional distress, humiliation, reputational harm, and other damages in an amount to be proven at trial.

335.    As a direct and proximate result of Custer County's conduct, Christa suffered fear, humiliation, trauma, emotional distress, loss of security in her home, and other damages in an amount to be proven at trial.

336.    Plaintiffs are entitled to compensatory damages, attorney fees under 42 U.S.C. § 1988, costs, and all other relief allowed by law against Custer County.

### ELEVENTH CAUSE OF ACTION
(42 U.S.C. § 1983 – Fourteenth Amendment Suppression of Exculpatory Evidence–Due process)

337.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

338.    At all times relevant, Defendants Walls, Kunkel, Maydole, Bennett, Matson, and Does 1 through 10 acted under color of state law.

339.    The Due Process Clause of the Fourteenth Amendment required Defendants to disclose, preserve, and accurately convey material exculpatory and impeachment evidence known to them, possessed by them, or within the possession of the investigating agency.

340.    Defendants violated Curtis's Fourteenth Amendment due-process rights by deliberately or recklessly withholding, suppressing, failing to disclose, or misleadingly

disclosing material exculpatory and impeachment evidence to prosecutors and the defense.

341. The suppressed or incompletely disclosed evidence included GPS and Life360-related location evidence, phone and call-record evidence, text-message and communication evidence, 7C gas-station surveillance evidence, and participant-location evidence bearing on who pursued whom, where the participants were located, whether Plaintiffs were blocked or cornered, whether Cole Thornock and Sarah Phillips actively searched for Plaintiffs' Tacoma, and whether Curtis acted in self-defense.

342. The evidence was favorable to Curtis because it supported self-defense, impeached the complaining witnesses, contradicted the narrative that Curtis was the sole aggressor, and showed that Cole Thornock, Sarah Phillips, D.T., Wright, and Dixon were participant-complainants rather than neutral victims.

343. The evidence was material because the felony charges against Curtis depended on the disputed sequence of pursuit, blockades, participant locations, firearms, communications, and the confrontation at Plaintiffs' home.

344. Defendants knew or had reason to know the evidence was material and favorable, including because defense counsel specifically sought GPS, Life360, and related location evidence, and because law enforcement had received or viewed GPS-coordinate information concerning D.T.'s location and movements.

345. Rather than disclose the complete underlying location and digital evidence, Defendants disclosed only selected or incomplete information, including a screenshot

with a single GPS coordinate, while withholding or failing to accurately disclose the full underlying evidence known or available to law enforcement.

346. Defendant Walls furthered the due-process violation by failing to disclose, preserve, or accurately present material GPS, Life360, phone, call-record, surveillance, and participant-location evidence known or available to him as an investigating officer.

347. Defendant Kunkel furthered the due-process violation by using, preserving, or failing to correct probable-cause materials and investigative information that omitted material exculpatory and impeachment evidence known to law enforcement.

348. Defendant Matson violated Curtis's rights under the Due Process Clause of the Fourteenth Amendment by deliberately or recklessly suppressing, concealing, altering, or failing to disclose material exculpatory and impeachment information known to her, including information showing that Sarah Phillips directed or encouraged the pursuit and that the private defendants' denial of pursuit was false or materially incomplete.

349. Matson's conduct deprived Curtis, his counsel, the prosecutor, and the court of material information bearing on self-defense, witness credibility, participant conduct, and probable cause.

350. Defendant Bennett furthered the due-process violation by failing to disclose or correct material facts known to him from the initial response, including facts showing that the complaining witnesses were participants in the pursuit and confrontation rather than neutral victims.

351. Defendant Maydole furthered the due-process violation by directing, approving, ratifying, or failing to correct the suppression, incomplete disclosure, or misleading

presentation of material exculpatory and impeachment evidence despite knowing or having reason to know that the evidence bore directly on Curtis's defense.

352.    Defendants acted with deliberate indifference to, or reckless disregard for, Curtis's due-process rights and for the truth.

353.    Defendants' suppression, incomplete disclosure, and misleading presentation of material exculpatory and impeachment evidence caused or prolonged Curtis's felony prosecution, $1,000,000 bond, pretrial detention, and approximately eleven months of incarceration.

354.    As a direct and proximate result, Curtis suffered loss of liberty, prolonged incarceration, emotional distress, humiliation, financial loss, attorney fees, defense costs, lost income, reputational harm, and other damages in an amount to be proven at trial.

355.    Defendants acted intentionally, maliciously, and/or with reckless disregard for Curtis's constitutional rights, entitling Curtis to compensatory damages, punitive damages against the individual defendants where allowed by law, attorney fees under 42 U.S.C. § 1988, costs, and all other proper relief.

### TWELFTH CAUSE OF ACTION
(42 U.S.C. § 1983, Fourth Amendment Failure to Intervene / Failure to Intercede Against Defendant Ethan Kelly and Does 1 through 10)

356.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

357.    At all times relevant, Defendant Kelly and Does 1 through 10 acted under color of the statutes, customs, policies, and usages of the State of Idaho and Custer County.

358.    The Fourth Amendment protects persons against unreasonable seizures and excessive force.

359.    Officers who are present when another officer violates a person's constitutional rights have a duty to intervene when they know or should know that the conduct is unconstitutional and have a realistic opportunity to prevent or stop it.

360.    Defendant Kunkel unreasonably seized Christa and used excessive force against her by grabbing her from inside the home, placing a firearm against her temple, removing her from the residence, dragging her into the darkness, and keeping her under officer control despite the absence of individualized facts showing that Christa posed an immediate threat.

361.    Defendant Kelly and Does 1 through 10 were present at or near the doorway when Kunkel seized and used force against Christa.

362.    They knew that Christa was not the reported shooter, was not armed, was not threatening officers, was not fleeing, and was not given a meaningful opportunity to comply safely.

363.    Kunkel's conduct was not instantaneous.

364.    It included the front-door encounter, the physical seizure of Christa, the pointing of a firearm at or near her head, her removal from inside the residence, her movement into the darkness, and her continued control by officers.

365.    During that sequence, Kelly and Does 1 through 10 had a realistic opportunity to intervene.

366.    Kelly and Does 1 through 10 failed to intervene, failed to direct Kunkel to lower or holster his firearm, failed to stop or limit the force used against Christa, failed to take control of the encounter in a constitutionally reasonable manner, and failed to prevent or shorten the unreasonable seizure and excessive force.

367.    As a direct and proximate result of Kelly's and the Doe defendants' failure to intervene, Christa suffered fear, humiliation, emotional distress, trauma, loss of security in her home, and other economic and non-economic damages in an amount to be proven at trial.

368.    The acts and omissions of Kelly and Does 1 through 10 were intentional, willful, wanton, malicious, and/or carried out with reckless disregard for Christa's constitutional rights, entitling Christa to punitive damages against the individual defendants in an amount to be proven at trial.

369.    Pursuant to 42 U.S.C. § 1988 and other applicable law, Christa is entitled to recover her reasonable attorney fees and costs incurred in this action.

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants as follows:

1.  For compensatory damages, including all special, general, economic, non-economic and nominal damages sustained as a direct and proximate result of Defendants' acts, omissions, constitutional violations, and other wrongful conduct in an amount exceeding $10,000;

2.  For punitive damages against the individual defendants to the extent permitted by law;

3.  For reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of federal or Idaho law;

4.  For pre-judgment and post-judgment interest as allowed by law;

5.  For such other and further relief as is just and proper.

DATED this 11th day of May, 2026

MAY, RAMMELL & WELLS, CHTD.
*Attorneys for Plaintiffs*

*/s/ Bron Rammell*
BRON RAMMELL

*/s/ Brit A. Lewis*
BRIT A. LEWIS